IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ANGELA C. STANLEY,
     Plaintiff,

vs.                                 Case No. 5:06cv81/MCR/EMT

UNITED STATES OF AMERICA, et al.,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

     This case filed pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971)[1] and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671, *et seq*., is now before the court upon Defendants' Motion for Summary Judgment, statement of material facts, and supporting documents (Docs. 35, 36, 43, 46). Plaintiff, a federal inmate proceeding pro se and in forma pauperis, filed a response in opposition to the motion and supporting documents (Docs. 42, 62). Upon review of the parties' submissions, it is the opinion of the undersigned that the motion for summary judgment filed by Defendants should be granted in part.

I.     PROCEDURAL HISTORY

     Plaintiff, an inmate at the Federal Prison Camp in Marianna, Florida (FPC-Marianna) filed her second amended complaint alleging a violation of her Eighth Amendment right to adequate medical care, as well as a claim for negligence under the FTCA, relating to medical treatment she received for injuries resulting from a fall on a sidewalk at FPC-Marianna (Doc. 24). Plaintiff names as Defendants Edgar Morales, a Mid-Level Practitioner (MLP) at FPC-Marianna; Dr. Julia Berrios,

---

[1]Bivens recognized a private right of action for money damages against federal actors that engaged in alleged violations of the Constitution or laws of the United States.  403 U.S. at 397, 91 S.Ct. at 2005.

a medical doctor at FPC-Marianna; and the United States of America (*id* at 1, 2).  As relief, Plaintiff seeks compensatory and punitive damages in the amount of $1,500,000.00 (*id.* at 4).

Defendants, in their motion for summary judgment, assert that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim because she failed to establish that she had a serious medical need or that the individual Defendants acted with deliberate indifference to that need (Doc. 35 at 9–17).  Furthermore, they argue that they are entitled to qualified immunity because the evidence does not show a constitutional violation, and even if the evidence showed a violation of Plaintiff's constitutional right, the right was not clearly established at the time of the alleged violation (*id*. at 17–20).  With regard to Plaintiff's federal tort claim, Defendants contend that Plaintiff has failed to come forward with sufficient evidence to prove that the medical treatment she received departed from the prevailing professional standard of care (*id*. at 20–21).  Accordingly, they argue, they are entitled to judgment as a matter of law.

II.     FACTS

The following facts are without substantial controversy.[2]  At all times relevant to this action Plaintiff was an inmate at FPC-Marianna.  On March 5, 2004, Plaintiff reported to the Health Services Unit stating that she had fallen on a sidewalk and injured her right hand (Doc. 24, Complaint, Statement of Facts; Doc. 36, Ex. 1, Declaration of Julia Berrios, M.D. ¶ 4A; Doc. 42, Affidavit of Angela Stanley; Doc. 43, Ex. 2, Declaration of Diane Hassan ¶ 2).  Diane Hassan, a

---

[2]The court conveys as facts those factual allegations of Plaintiff's verified Second Amended Complaint (Doc. 24), Defendants' affidavits and other documents in support of their motion for summary judgment (Docs. 36, 43, 46), and Plaintiff's affidavits and documents in support of her response to Defendants' summary judgment motion (Docs. 42, Doc. 62), to the extent those facts are undisputed and comply with the requirements for affidavits specified in Rule 56 — that they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see, e.g.*, Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980); Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980).  The court will not consider as facts Plaintiff's statements in her response to Defendants' special report (Doc. 62) Unsworn statements, even from pro se parties, "should not be considered in determining the propriety of summary judgment." Wells v. Cramer, No. 07-10354, 2008 WL 110088, at *3, (11th Cir. Jan. 11, 2008) (quoting Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980)).  Federal law does provide an alternative to making a sworn statement, but requires that the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury.  28 U.S.C. § 1746.  Plaintiff's response to Defendants' special report is not sworn and does not include an averment that the statements contained therein are true under the penalties of perjury.  Therefore, the statements of Plaintiff in her response to Defendants' special report will not be considered in resolving the instant motion for summary judgment.  Plaintiff was advised of the Rule 56 requirements by order of this court before she filed her response to Defendants' motion for summary judgment and statement of undisputed facts (*see* Doc. 38).

Mid-Level Practitioner, examined Plaintiff and noted that there was no deformity of Plaintiff's right wrist, despite Plaintiff's report that she was unable to move the wrist due to pain, and Hassan noted that there was no injury to Plaintiff's right elbow (Doc. 36, Ex. 1, Berrios Decl. ¶ 4A; Doc. 43, Ex. 2, Hassan Decl. ¶¶ 2–3; Doc. 62, Ex. L).  Ms. Hassan further noted that Plaintiff's right fifth finger was deviated inward, while Plaintiff's first through fourth fingers had good range of motion (Doc. 36, Ex. 1, Berrios Decl. ¶ 4A; Doc. 43, Ex. 2, Hassan Decl. ¶¶ 2–3; Doc. 62, Ex. L).  Plaintiff and others who observed Plaintiff's injuries observed that the palm of Plaintiff's right hand and the area around her fifth finger was bruised and discolored (Doc. 42, Stanley Aff., Affidavit of Lequiter Hopkins, Affidavit of Frances Williams). MLP Hassan noted an abrasion on Plaintiff's left knee (Doc. 62, Ex. L). Ms. Hassan assessed Plaintiff's injuries as a strain to her right wrist and hand (*id.*). She cleaned the abrasion and applied a bandage, applied an ortho glass splint and a sling made from an Ace bandage to Plaintiff's right arm, advised her to take Motrin that she had in her possession for pain, and placed her on convalescence until March 12, 2004 (Doc. 24, Complaint, Statement of Facts; Doc. 36, Ex. 1, Berrios Decl. ¶ 4A; Doc. 42, Stanley Aff.; Doc. 43, Ex. 2, Hassan Decl. ¶ 3). Ms. Hassan submitted a request for x-rays of Plaintiff's right wrist and hand (Doc. 24, Complaint, Statement of Facts; Doc. 36, Ex. 1, Berrios Decl. ¶ 4A; Doc. 42, Stanley Aff.; Doc. 43, Ex. 2, Hassan Decl. ¶ 3; Doc. 62, Ex. L).

According to Tara Hollinger, a health technician, when a physician submits an x-ray request, she takes the x-rays and submit the films to the radiologist (Doc. 46, Ex. 6, Declaration of Tara Hollinger ¶ 2).  After the radiologist reads the films, Ms. Hollinger forwards the results to the inmate's physician (*id.*).

On March 6, 2004, the day after Plaintiff's fall, Plaintiff complained of pain in her arm to Defendant MLP Morales (Doc. 24, Complaint, Statement of Facts; Doc. 36, Ex. 1, Berrios Decl. ¶4B; Doc. 42, Stanley Aff.; Doc. 62, Ex. L).  With regard to Plaintiff's fourth and fifth fingers, MLP Morales noted a small open wound with no bleeding, partial reference to pain at movement, and good grip (Doc. 62, Ex. L; Doc. 36, Ex. 1, Berrios Decl. ¶ 4B).  MLP Morales also noted a small area of trauma to Plaintiff's right hand with a small bruise with no bleeding (Doc. 62, Ex. L).  With regard to Plaintiff's right wrist, MLP Morales noted pain at flexion or extension secondary to a contusion or bruise, and Plaintiff states she could not twist or flex her wrist without pain (Doc. 42,

Stanley Aff.; Doc. 62, Ex. L).  A preliminary reading of the x-rays taken the day before revealed no acute fracture or dislocation (Doc. 36, Ex. 1, Berrios Decl. ¶ 4B; Doc. 62, Ex. L).  MLP Morales assessed Plaintiff's condition as a superficial contusion to Plaintiff's right wrist and a laceration to the area between her fourth and fifth fingers, and a small laceration at the metacarpal area (Doc. 62, Ex. L).  He cleaned Plaintiff's wounds, changed the bandage on her knee, and removed the splint (Doc. 24, Complaint, Statement of Facts; Doc. 36 at 2 ¶ 5; Doc. 42, Stanley Aff.; Doc. 62, Ex. L).  Morales does not dispute Plaintiff's assertion that he did not replace the splint or arm sling (Doc. 42, Stanley Aff., Williams Aff., Hopkins Aff.; *see also* Doc. 36 at 2 ¶ 5).  MLP Morales scheduled Plaintiff for a follow-up visit on March 12, six days later (Doc. 62, Ex. L).

On March 12, MLP Morales conducted a follow-up examination of Plaintiff.  MLP Morales noted a minor hematoma at the palm area of her right hand and swelling, but the lacerations were healed (Doc. 36, Ex. 1, Berrios Aff. ¶ 4C; Doc. 62, Ex. M; Doc. 42, Stanley Aff.).  Plaintiff asked Morales to order another x-ray, but x-rays were not taken because they had been taken one week prior, on March 5 (Doc. 24, Complaint, Statement of Facts; Doc. 36, Ex. 1, Berrios Decl. ¶ 4C).  MLP Morales advised Plaintiff to apply ice to the swollen area twice per day (Doc. 36, Ex. 1, Berrios Decl. ¶ 4C; Doc. 62, Ex. M).  Morales placed Plaintiff on convalescence for an additional five days and ordered a follow-up examination one week later, on March 19 (Doc. 36, Ex. 1, Berrios Decl. ¶ 4C; Doc. 62, Ex. M).

On March 16, 2004, MLP Morales examined Plaintiff during her visit to the Chronic Care Clinic (Doc. 36, Ex. 1, Berrios Decl. ¶ 4D; Doc. 42, Stanley Aff.; Doc. 62, Ex. M).  Morales noted good supination and pronation, good pulse, good vascularity, and no new deficit to Plaintiff's right arm and wrist (Doc. 36, Ex. 1, Berrios Decl. ¶ 4D; Doc. 62, Ex. M).  Morales continued Plaintiff's prescription for Motrin (Doc. 62, Ex. M).  Plaintiff states she requested an x-ray, and the medical records indicate that Morales ordered an x-ray of her right elbow (Doc. 42, Stanley Aff.; Doc. 62, Ex. M).

On March 18, 2004, the FPC-Marianna medical department received the x-ray report of Glenn L. Clark, the radiologist who read the x-rays of Plaintiff's hand and wrist taken on March 5, the day of Plaintiff's fall (Doc. 62, Ex. M).  The x-ray report showed an acute fracture of the proximal phalanx of Plaintiff's fifth finger, and no fracture or dislocation of the wrist (Doc. 62, Ex.

M; Doc. 36, Ex. 1, Berrios Decl. ¶ 4E).  MLP Morales informed Plaintiff of the results and notified Dr. Berrios, the clinical director (Doc. 62, Ex. M; Doc. 36, Ex. 1, Berrios Decl. ¶ 4E; Doc. 42, Stanley Aff.).  Morales applied a splint to Plaintiff's finger and scheduled a follow-up visit for two weeks (Doc. 62, Ex. M; Doc. 36, Ex. 1, Berrios Decl. ¶ 4E; Doc. 42, Stanley Aff.).  As previously noted, Plaintiff had a prescription for Motrin.

The next day, on March 19, 2004, Plaintiff was examined by Defendant Dr. Berrios.  Plaintiff complained of pain in her right elbow (Doc. 36, Ex. 1, Berrios Decl. ¶ 4F).  Dr. Berrios noted that Plaintiff had full range of motion to her right shoulder, slight swelling of her right elbow with adequate range of motion, and an impacted fracture to the right fifth finger (Doc. 36, Ex. 1, Berrios Aff. ¶ 4F; Doc. 62, Ex. M; Doc. 42, Stanley Aff.).  Dr. Berrios continued the finger splint, gave Plaintiff an arm sling, and advised her to apply ice to her elbow (Doc. 36, Ex. 1, Berrios Aff. ¶ 4F; Doc. 62, Ex. M; Doc. 42, Stanley Aff.).  Dr. Berrios noted that Plaintiff had a prescription for Motrin for pain (Doc. 62, Ex. M).  Dr. Berrios also ordered x-rays of Plaintiff's right elbow and shoulder, placed her on convalescence for one week, and requested an orthopedic evaluation (Doc. 36, Ex. 1, Berrios Aff. ¶ 4F; Doc. 62, Ex. M).

On March 26, MLP Morales extended Plaintiff's convalescence for two weeks (Doc. 36, Ex. 1, Berrios Aff. ¶ 4H; Doc. 62, Ex. M).  On March 29, Plaintiff was examined by MLP Morales (Doc. 36, Ex. 1, Berrios Aff. ¶ 4I; Doc. 62, Ex. M).  Plaintiff states that her finger and arm were swollen (Doc. 24, Complaint, Statement of Facts).  Plaintiff requested to go back to work with restrictions, and Morales restricted her activities to no typing or keyboard work, only teaching (Doc. 62, Ex. M).  Morales advised Plaintiff to start slowly performing therapy and gradual movement exercises of her fifth finger under warm water, although Plaintiff states she was never instructed on the exercises (Doc. 36, Ex. 1, Berrios Aff. ¶ 4I; Doc. 62, Ex. M; Doc. 24, Complaint, Statement of Facts; Doc. 42, Stanley Aff.).  Morales ordered x-rays of Plaintiff's fifth finger to follow-up on the fracture (*id.*).

On April 6, 2004, Plaintiff was examined by Dr. Mitchell, a contract orthopedic surgeon (Doc. 24, Complaint, Statement of Facts; Doc. 36, Ex. 1, Berrios Aff. ¶ 4J; Doc. 46 Ex. 8).  Plaintiff's x-rays had been provided to Dr. Mitchell (Doc. 36, Ex. 1, Berrios Aff. ¶ 4G).  Dr. Mitchell diagnosed a right radial fracture of Plaintiff's right elbow but indicated that casting was not required (Doc. 46, Ex. 8).  He recommended light duty use of the right upper extremity and elevation

of the arm to reduce swelling (*id*.).  Dr. Mitchell also diagnosed the proximal phalanx fracture of Plaintiff right fifth finger with mal-rotation, and indicated that surgery was required to correct the deformity (*id*.).  The same day, Dr. Berrios reviewed the radiologist's report of the x-rays of Plaintiff's shoulder and elbow, as well as Dr. Mitchell's consultation report (Doc. 46, Ex. 8; Doc. 62, Ex. M; Doc. 42, Stanley Aff.).  On April 9, 2004, Dr. Berrios authorized surgery for Plaintiff's finger, as recommended by Dr. Mitchell (Doc. 36, Ex. 1, Berrios Decl. ¶ 4K; Doc. 46, Ex. 8).

On April 20, Dr. Berrios reviewed the follow-up x-rays of Plaintiff's finger, which had been ordered by MLP Morales on March 29 and read by the radiologist on April 17 (Doc. 62, Ex. M). The radiologist report noted the fracture to the fifth finger and that there was moderate displacement of the fragments (*id.*).  The radiologist indicated that the position and alignment of the fragments were satisfactory for healing, but immobilization was recommended (*id*.).  Dr. Berrios noted on the report her belief that Plaintiff already had an ortho splint for her finger as there was no indication in the medical records that the splint had been removed by Morales (*id*.).

On May 19, Dr. Mitchell performed surgery on Plaintiff's right fifth finger with no complications (Doc. 36, Ex. 1, Berrios Decl. ¶ 4K; Doc. 46, Ex. 8).  Upon Plaintiff's return to the institution that same day, Plaintiff was given Tylenol #3, continued on convalescence through May 31, 2004, and given instructions to elevate her arm with an extra pillow (Doc. 43, Ex. 2, Hassan Decl. ¶ 4; Doc. 36, Ex. 1, Berrios Decl. ¶ 4K; Doc. 42, Stanley Aff.).  There were no dressing changes indicated at that time as Dr. Mitchell had not recommended it, and Plaintiff did not request it (Doc. 36, Ex. 1, Berrios Decl. ¶ 4K).  Two days later, Plaintiff was examined by an MLP, who advised her to continue taking the Tylenol for three more days and to take Motrin in between the doses of Tylenol (Doc. 36, Ex. 1, Berrios Decl. ¶ 4L).

During the weeks between Plaintiff's fall and her surgery when she did not have an arm sling, she attempted to immobilize her right arm by holding it across her chest (Doc. 42, Affidavit of Joan Reed, Affidavit of LeQuiter Hopkins, Affidavit of Frances Williams).  During that time, Inmate Frances Williams massaged Plaintiff's right arm and hand with BenGay, wrapped it with an Ace bandage, and elevated the arm with a pillow at night (Doc. 42, Williams Aff.).

On May 24, five days after the surgery, Dr. Berrios examined Plaintiff and removed the dressing (Doc. 36, Ex. 1, Berrios Decl. ¶ 4M).  Dr. Berrios observed that there was no infection,

good circulation, and no signs of redness or swelling to the area (*id*.).  On May 28, Plaintiff's convalescence was extended through June 14, 2004 (*id.*, ¶ 4N).

On June 1, 2004, Plaintiff was seen by Dr. Mitchell, the orthopedic surgeon (Doc. 42, Stanley Aff.; Doc. 36, Ex. 1, Berrios Decl. ¶ 4O; Doc. 46, Ex. 8).  Dr. Mitchell indicated that there were no signs of infection (Doc. 46, Ex. 8).  Dr. Mitchell advised Plaintiff to work on flexion and extension exercises and instructed her on performing some range of motion exercises (Doc. 42, Stanley Aff.; Doc. 36, Ex. 1, Berrios Decl. ¶ 4O; Doc. 46, Ex. 8).  On June 16, Plaintiff's convalescence was extended through July 16, 2004 (Doc. 36, Ex. 1, Berrios Decl. ¶4P).

On June 29, Plaintiff complained to MLP Eden Abad of pain in her right upper arm, and MLP Abad ordered x-rays of Plaintiff's right elbow and fifth finger (Doc. 62, Ex. M).  The x-rays were performed on July 13 (Doc. 46, Ex. 6, Hollinger Decl. ¶ 3; Doc. 62, Ex. M).  As to Plaintiff's elbow, the x-ray revealed a tiny spur on the olecranon (Doc. 62, Ex. M).  The x-ray also noted a history of radial head fracture, but the skeletal structures were in excellent position and alignment, and no significant joint effusion was present (*id*.).  As to Plaintiff's finger, the fracture appeared to be healing nicely, with the bone fragments in excellent position and alignment (*id*.).

On July 2, 2004, Plaintiff was seen by Dr. Mitchell for removal of the pins in her finger (Doc. 42, Stanley Aff.; Doc. 36, Ex. 1, Berrios Decl. ¶4Q; Doc. 46, Ex. 8).  There was no evidence of tenderness over the fracture site of the finger (Doc. 46, Ex. 8).  Dr. Mitchell noted good extension of the finger but some decreased range of motion with flexion (*id*.).  X-rays of the finger were taken, and they showed good signs of healing (*id*.).  The x-rays showed small evidence of rotation of the finger, but the finger was maintaining adequate position at the time of the examination (*id*.).  Examination of Plaintiff's right elbow revealed no tenderness over the radial head, and Plaintiff had full range of motion of the elbow without difficulty (*id*.).  X-rays of the right elbow were taken, and they showed the radial head fracture was maintaining adequate position, and there were good signs that healing was in process (*id*.).  Dr. Mitchell recommended physical therapy to assist Plaintiff with range of motion in her finger, and instructed her on flexion and extension exercises to do before the physical therapy started (Doc. 42, Stanley Aff.; Doc. 36, Ex. 1, Berrios Decl. ¶ 4Q; Doc. 46, Ex. 8).  Dr. Mitchell recommended a follow-up examination with x-rays in approximately six weeks (Doc. 46, Ex. 8).

On July 7, Dr. Berrios submitted a request to the Central Office of the Office of Medical Designations and Transportation for the Bureau of Prisons that Plaintiff be transferred to a Medical Center for physical therapy, as recommended by Dr. Mitchell (*see* Doc. 62, Exs. E, M).  The request was denied on July 13, with instructions to provide Plaintiff instruction for self-guided exercises (Doc. 62, Ex. E).

On July 13, 2004, three days prior to the date Plaintiff's convalescence expired, a nurse took Plaintiff off convalescence to drive a bus (Doc. 42, Stanley Aff.).  On July 16, 2004, Plaintiff was seen by an MLP (Doc. 36, Ex. 1, Berrios Decl. ¶ 4R).  Plaintiff reported that her right arm had started aching after she drove the bus (*id*.).  Plaintiff stated that the pain was mostly at night, at a pain level of 3 out of 10, and during the day her pain was at a level of 1–2 out of 10 (*id*.).  Plaintiff was instructed to take Motrin for the pain (*id*.).

On July 18, Plaintiff was seen by MLP Eden Abad, who instructed her to continue exercises as home therapy for her finger, and he gave Plaintiff a copy of instructions on how to do the exercises (Doc. 62, Ex. M; Doc. 36, Ex. 1, Berrios Decl. ¶ 4S; Doc. 42, Stanley Aff.).  The MLP placed the following restrictions on Plaintiff's activities:  no use of the right hand, no pushing, no pulling, and no lifting of more than ten pounds (*id*.).  Plaintiff requested an exercise ball, but MLP Abad did not give her one until August 24, 2004 (Doc. 42, Stanley Aff.; Doc. 36, Ex. 1, Berrios Decl. ¶ 4V).

The next day, on July 19, Plaintiff was examined by Dr. Berrios (Doc. 36, Ex. 1, Berrios Decl. ¶ 4T; Doc. 62, Ex. M).  Dr. Berrios provided oral and written instructions to Plaintiff on flexion, extension, and stretching exercises which she requested from Dr. Mitchell (Doc. 42, Stanley Aff; Doc. 36, Ex. 1, Berrios Decl. ¶ 4T; Doc. 62, Ex. M).  Dr. Berrios noted that the flexion of Plaintiff's finger was 95°, with less than 1/2 inch from her fingertip to her palm (Doc. 62, Ex. M).

On August 9, 2004, Plaintiff was seen again by Dr. Mitchell, the orthopedic surgeon (Doc. 36, Ex. 1, Berrios Decl. ¶ 4U; Doc. 46, Ex. 8).  The examination revealed no evidence of tenderness over the fracture site of her finger, and her right upper extremity was neurovascularly intact (Doc. 46, Ex. 8).  The doctor noted that Plaintiff had "much improved" range of motion of her finger without any evidence of difficulty (*id*.).  Examination of the right elbow revealed no tenderness over the radial head, and Plaintiff had full range of motion without difficulty (*id*.).  X-rays of Plaintiff's

finger and elbow showed that both fracture sites had healed well, and there was no evidence of bony deformity of the elbow (*id.*). Dr. Mitchell released Plaintiff from his care, noting that Plaintiff may still have very small difficulties with lack of range of motion in her finger, but she was doing so well that she should have very little functional difficulty in activities of daily living (*id.*).

Plaintiff states that her right fifth finger is "shorter" than before the accident, and she has limited range of motion in her finger as she is unable to touch the palm of her right hand with her right fifth finger by 1/2 an inch, and she cannot fully extend the finger (Doc. 24, Complaint, Statement of Facts). She additionally states that her right elbow is irregular in shape and size, and she does not have full range of motion in her elbow (*id.*). Plaintiff seeks compensatory damages for pain and suffering and future medical expenses (*id.*). She also seeks punitive damages (*id.*).

III.    LEGAL STANDARDS

    A.    Summary Judgment Standard

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support her case or present affirmative evidence that Plaintiff will be unable to prove her case at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. Anderson, 477 U.S. at 248. An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). If reasonable minds could differ on the inferences arising from undisputed

facts, then a court should deny summary judgment." <u>Miranda v. B & B Cash Grocery Store, Inc.</u>, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing <u>Mercantile Bank & Trust Co. v. Fidelity and Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).  The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." <u>Anderson</u>, 477 U.S. at 249–50.  "A mere 'scintilla' of evidence supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment.  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting <u>Anderson</u>, 477 U.S. at 252, 106 S. Ct. at 2512). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient.  <u>Celotex Corp.</u>, 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  <i>Id.</i>; <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997); <u>Hammer v. Slater</u>, 20 F.3d 1137 (11th Cir. 1994).  The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative value, and are legally insufficient to defeat summary judgment. <i>See</i> <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000); <u>Sammons v. Taylor</u>, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

B.      Eighth Amendment Standard

In her Second Amended Complaint, Plaintiff claims that Defendants were deliberately indifferent to her medical needs, in violation of the Eighth Amendment.  It is well settled that the government has a constitutional duty to provide minimally adequate medical care to prisoners. <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1504 (11th Cir. 1991).  Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <i>Id.</i> at 1505 (citing <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. <i>Id.</i> (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000).  First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'"  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (internal quotation omitted)).  Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment.  Id. (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements.  Taylor, 221 F.3d at 1258.  As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need."  Estelle, 429 U.S. at 104.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); see Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm.").  In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); see Taylor, 221 F.3d at 1257; see also Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference."  Estelle, 429 U.S. at 105.  "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference.  Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994).  However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made.  Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)).  To do otherwise would be "to constitutionalize claims that sound in tort law."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (quotation omitted).

C.      Supervisory Liability for Bivens Claim

Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  See Cottone v. Jenne, 362 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  Id. (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"   Id. (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"  Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Furthermore, filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied.  Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), aff'd, 915 F.2d 1574 (6th Cir. 1990); see also Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving

inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 362 F.3d at 1360 (internal quotation marks and citation omitted).

D.    Sovereign Immunity for Bivens Claim

The doctrine of sovereign immunity precludes a plaintiff's Bivens claims for monetary relief against an individual defendant in his or her official capacity, as well as Bivens claims against the United States. Official capacity claims for monetary damages based upon allegations of constitutional violations are barred because they are considered suits against the United States which has not waived its sovereign immunity for such claims. FDIC v. Meyer, 510 U.S. 471, 484–86, 114 S. Ct. 996, 1004–06, 127 L. Ed. 2d 308 (1994); *see also* Marsden v. Federal B.O.P., 856 F. Supp. 832, 835 (S.D.N.Y. 1994) (claims for money damages against individual federal defendants in an official capacity must be dismissed for lack of jurisdiction) (citing Kentucky v. Graham, 473 U.S. 159, 165-67, 105 S. Ct. 3099, 3104–05, 87 L. Ed. 2d 114 (1985)).

E.    Qualified Immunity for Bivens Claim

Defendants assert they are entitled to qualified immunity from suit in their individual capacities. The doctrine of qualified immunity is a guarantee of fair warning. McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 290, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); Powell v. Ga. Dep't of Human Resources, 114 F.3d 1074, 1077 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give

rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. McElligott, 182 F.3d at 1260 (citing United States v. Lanier, 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. at 1194.  The Supreme Court has established a two-part test for evaluating a claim of qualified immunity.  First, the trial court must determine whether a constitutional right has been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).  The court must assess the facts in a light most favorable to the party asserting the injury.  Id.

Second, if a violation has been established, the court must determine whether the right was "clearly established." Id.  The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity.  Hope, 536 U.S. 739; Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar.  Hope, 536 U.S. at 739.  Instead, the law merely must give Defendants "fair warning" that their actions are unconstitutional. Id.  In light of pre-existing law, the unlawfulness must be apparent. Id.; Creighton, 483 U.S. at 640.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997)).

In cases where improper motive is an element of the constitutional claim, a defendant is entitled to qualified immunity only when, among other things, "the record indisputably establishes that the defendant in fact was motivated, *at least in part*, by lawful considerations." Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000); *see also* Foy v. Holston, 94 F.3d 1528, 1535

(11th Cir. 1996) ("the record makes it clear that Defendants' acts were actually motivated by lawful considerations without which they would not have acted.").

  F.  <u>Federal Tort Claim</u>

  The Federal Tort Claims Act was "designed to provide redress for ordinary torts recognized by state law." <u>Ochran v. United States</u>, 273 F.3d 1315, 1317 (11th Cir. 2001) (internal quotation and citation omitted). In determining whether a tort occurred, the federal court must apply the tort law of the state where the alleged tort occurred. <u>Stone v. United States</u>, 373 F.3d 1129, 1130 (11th Cir. 2004). In Florida, in order to prove medical malpractice, "the claimant shall have the burden of proving by the greater weight of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider." Fla. Stat. § 766.102(1). The prevailing professional standard of care for a given health care provider is that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers. *Id.* Additionally, the existence of a medical injury does not create any inference or presumption of negligence against a health care provider, and the plaintiff maintains the burden of proving that an injury was proximately caused by a breach of the prevailing professional standard of care by the health care provider. Fla. Stat. § 766.102(3).

## IV.  CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

  In determining whether evidence may be considered on summary judgment, the court is mindful of the standard regarding the consideration of hearsay statements included in verified pleadings, affidavits, documents, and other materials submitted pursuant to Rule 56. The general rule is that inadmissible hearsay, meaning an out-of-court statement presented for the purpose of establishing the truth of the content of the statement and that does not fall within an exception to the hearsay rule, may not be considered on a motion for summary judgment. <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1322 (11th Cir. 1999) (citation omitted). The court may consider "'otherwise admissible evidence to be submitted in inadmissible form at the summary judgment state, though at trial it must be submitted in admissible form.'" *Id.* at 1324 (quoting <u>McMillian v. Johnson</u>, 88 F.3d 1573, 1584–85 (11th Cir. 1996)). The "inadmissible form" in which the "otherwise admissible" evidence may be submitted is a kind of evidentiary material listed in Rule 56(c), namely, the pleadings, the

discovery and disclosure materials on file, and any affidavits.[3]  *See* <u>Celotex</u>, 477 U.S. at 324 (citing Rule 56).  Furthermore, an out-of-court statement made to a Rule 56 affiant or deposition deponent must be admissible at trial for some purpose, "[f]or example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence).  <u>Macuba</u>, 193 F.3d 1323–24 (footnotes omitted).  Thus, if a hearsay statement is offered for its truth and would not be admissible at trial under an exception to the hearsay rule, it may not be considered on summary judgment.  *See id.* at 1325.  This is true even though the hearsay statement might be admissible at trial for impeachment, because to be considered on summary judgment, the statement must be admissible as substantive evidence.  *Id.* (citing <u>McMillian</u>, 88 F.3d at 1584).  Finally, "Rule 56(e)'s personal knowledge requirement prevents statements in affidavits based, in part, 'upon information and belief—instead of only knowledge—from raising genuine issues of fact sufficient to defeat summary judgment."  <u>Pace v. Capobianco</u>, 283 F.3d 1275, 1278 (11th Cir. 2002).  In light of this standard, the undersigned reviewed all of the parties' submissions to determine whether the material conformed to the Rule 56 standard.

A.      Eighth Amendment Claim

Plaintiff claims that the following conduct of Defendants Morales and Berrios constituted deliberate indifference to her medical needs: (1) they failed to properly splint her finger, which resulted in needless pain and the need for surgery, and (2) they failed to timely x-ray her elbow and provide a sling to immobilize it, which resulted in needless pain for weeks and prevented the surgeon from being able to cast it (Doc. 62 at 6).

Defendants contend Plaintiff has failed to present any evidence that her medical care placed her at a substantial risk of serious harm at any point or that her medical needs were not addressed (Doc. 35 at 10).  They argue that Plaintiff does not allege that she was diagnosed by any physician who mandated treatment which she did not receive, and even if Plaintiff's allegations were construed

---

[3]However, the party opposing a summary judgment motion may not rely merely on allegations or denials in its own pleading; rather, its response must "by affidavits or as otherwise provided in [Rule 56,]" set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).

as implying that her medical need was so obvious that even a lay person would easily recognize the necessity of a doctor's attention, Defendants provided continuing care to Plaintiff for her finger and elbow once they were aware of those injuries, and they did not deliberately or recklessly disregard her medical needs, as evidenced by Dr. Berrios' affidavit and Plaintiff's medical records (*id*. at 10–16).

In response to Defendants' contentions, Plaintiff presented evidence in the form of affidavits of other inmates and herself which state that on March 5, the day of the accident, her right hand and arm were swollen (Doc. 42, Stanley Aff., Affidavit of Juanita Cooper, Hopkins Aff., Williams Aff.). Defendants dispute this fact with medical records indicating there was no swelling (Doc. 36, Berrios Decl. ¶ 4A; Doc. 62, Ex. L). Plaintiff also submitted evidence that on March 6, when MLP Morales examined her, her right hand, fifth finger, and the area of her arm from her hand to her humerus were still swollen, and the area around her fifth finger was discolored, black and blue (Doc. 42, Stanley Aff., Cooper Aff.). Defendants dispute this fact with medical records indicating that there was no swelling or discoloration, except a small bruise at Plaintiff's fifth finger, and a bruise and swelling on her palm (Doc. 36, Ex. 1, Berrios Decl. ¶ 4B; Doc. 62, Exs. L, M). Plaintiff also states that on March 6 she could not twist or bend her arm (Doc. 42, Stanley Aff). Defendants produced medical records indicating that on that day Plaintiff had good flexion and extension of the arm and good supination and pronation (Doc. 36, Ex. 1, Berrios Decl. ¶ 4B; Doc. 62, Ex. L). Plaintiff states that on March 6, 12, and 16, she complained to MLP Morales of pain in her right arm (Doc. 42, Stanley Aff). Defendants produced Dr. Berrios' affidavit stating that the first time Plaintiff complained of pain in her elbow was March 19 (Doc. 36, Ex. 1, Berrios Decl. ¶ 4F). The parties also dispute, through affidavits and medical records, whether Plaintiff had good range of motion in her right hand, fingers, and elbow during MLP Morales' examinations on March 12 and 16 (Doc. 42, Stanley Aff.; Doc. 36, Ex. 1, Berrios Decl. ¶¶ 4C, 4D; Doc. 62, Ex. M). Additionally, Plaintiff states that her finger and arm were still swollen when Morales examined her on March 29, and in her affidavit submitted in response to Defendants' special report, she states for the first time that on March 29, Defendant Morales removed the finger splint and arm sling had been provided on March 18 and 19, respectively (Doc. 42, Stanley Aff.).

Initially, Defendants argue that Plaintiff's injuries did not constitute a serious medical need (Doc. 35 at 10–11).  They argue that Plaintiff has presented no evidence that the medical care she received placed her at a substantial risk of serious harm.  They contend that Plaintiff was examined and properly treated by medical staff on numerous occasions immediately after her injury, as evidenced by her medical records.  Furthermore, the medical staff properly referred Plaintiff to a specialist and thereafter followed his advice.  Defendants further argue that Plaintiff has presented no evidence that suggests she currently suffers from a condition caused by the alleged indifference to her medical needs.

Although evidence of recent traumatic injury has generally been sufficient to demonstrate a serious medical need, a broken bone does not per se constitute a serious medical need.  *Compare* Webb v. Langly, No. 07-13936, 2008 WL 598284, at *1 (11th Cir. Mar. 6, 2008) (affirming district court's conclusions that substantial delay in providing surgery for fractured nose did not pose a serious medical need and no defendant acted with the requisite deliberate indifference to establish a constitutional violation) *with* Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (defendants did not dispute that broken foot can be a serious and painful injury) *and* Hughes v. Noble, 295 F.2d 495, 496 (5th Cir.1961) (finding that complaint stated § 1983 claim where plaintiff alleged he was held in jail cell and not provided medical treatment for approximately thirteen hours, "despite his repeated requests for medical attention and severe pain" for injuries ultimately diagnosed "as two dislocated and one fractured cervical vertebrae.") *and* Minton v. Spann, No. 5:05cv89/RS/WCS, 2007 WL 1099114, at *16 (N.D. Fla. Apr. 10, 2007) (a broken bone is a serious medical need).  In deciding the seriousness of a plaintiff's medical need, an examination of the evidence concerning the effect of the delay or absence of treatment is helpful.  *See* Hill, 40 F.3d at 1188 ("An inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed.").

In the instant case, the detrimental effect of any alleged delay or inadequacies of Defendants' treatment of Plaintiff's injuries appears to be negligible.  Defendants provided medical records verifying that Plaintiff's broken finger healed well and that difficulties with lack of range of motion in the finger were "very small" (Doc. 46, Ex. 8), and her elbow healed well without treatment, there

was no evidence of bony deformity, and Plaintiff had full range of motion in her elbow without difficulty (*id.*).  Plaintiff has failed to place verifying medical evidence in the record that establishes that any delay or absence of treatment of her injuries had a detrimental effect.  However, viewing the facts in the light most favorable to Plaintiff, a reasonable jury could that Plaintiff's injuries from her fall on the sidewalk posed a serious medical need as her hand and lower arm were swollen, the area around her fifth finger was discolored and her finger was deviated inward, she complained of pain in her arm for two weeks after the accident, movement of her wrist and arm was limited to some degree, and her broken finger and elbow were eventually diagnosed.

However, viewing the facts in the light most favorable to Plaintiff, the undersigned concludes that the evidence is not sufficient for a jury to find that MLP Morales acted with deliberate indifference with regard to Plaintiff's injuries.  With regard to Morales' removal of the splint and arm sling the day after Plaintiff's accident, the preliminary reading of the x-ray taken the day of the accident was negative for acute fracture or dislocation.  The radiologist's report which diagnosed the acute finger fracture was not received by Defendants until March 18, 2004, the same day that MLP Morales provided Plaintiff with a finger splint.  MLP Morales notified Dr. Berrios of the x-ray report, and the next day, on March 19, Dr. Berrios continued the splint and Motrin for pain relief, and ordered an evaluation by an orthopedic specialist.  During this two-week period before the fracture was diagnosed by the radiologist, Plaintiff was examined weekly and received treatment in the form of convalescence and pain medication.  Assuming the truth of Plaintiff's allegation that Morales removed the splint on March 29, and advised Plaintiff to start slowly performing therapy and gradual movement exercises of her fifth finger under warm water, this conduct does not constitute deliberate indifference to her medical needs in light of the fact that Plaintiff requested that she be permitted to return to work with restrictions, she had been wearing the splint for ten days, there is no evidence that during that examination she complained of pain or that there was discoloration, the radiologist had not yet recommended that the finger be immobilized, and the orthopedic surgeon had not yet recommended surgery.  Additionally, Morales restricted Plaintiff's activities to no typing or keyboard work and only teaching, and he monitored the status of the injury by ordering follow-up x-rays.  Therefore, the facts fail to demonstrate that MLP Morales subjectively knew that the initial two-week delay in providing the splint or the removal of the splint on March 29 created a substantial risk of

serious pain or injury to Plaintiff's finger, and that he disregarded the risk with conduct that was more than negligence.

Likewise, the facts do not establish a constitutional violation with regard to Plaintiff's elbow. Plaintiff claims that Defendant Morales deprived her of necessary medical care by delaying eleven (11) days before ordering an x-ray of her elbow (the medical records show that eleven days elapsed between Plaintiff's accident on March 5 and MLP Morales' ordering an x-ray of her elbow on March 16 (*see* Doc. 42, Ex. M)), as well as delaying fourteen days before providing an arm sling and then removing the sling after ten days.  The evidence shows that when Plaintiff was examined by Defendant Morales on March 6, the day after her accident, her arm was swollen, and when he examined her on March 6, 12, and 16, she complained of pain in her arm and was unable to twist or bend it.  Additionally, a reasonable inference could be drawn that Plaintiff's elbow was at least slightly swollen on March 16, since Dr. Berrios observed slight swelling of the elbow three days later on March 19.  However, Defendants submitted evidence that Plaintiff did not report pain specifically in her elbow until March 19, and the court notes that although Plaintiff submitted her own affidavit stating that she reported pain in her **arm** prior to that date, she does not state that she specifically identified pain in her elbow.  Therefore, with regard to the elbow, the only symptoms of injury of which Morales was subjectively aware were some swelling and an inability to twist or bend the arm. Morales examined Plaintiff on March 6, and he noted that there was good flexion and extension of the arm, and good supination and pronation, and on March 12, he noted good supination and pronation with no new deficits.  Furthermore, as previously noted, Plaintiff was examined weekly and received treatment in the form of convalescence and pain medication.  Additionally, there is no evidence that the condition of Plaintiff's elbow worsened in the weeks following her accident. Although Dr. Berrios assessed the need for an x-ray and arm sling upon examining Plaintiff for the first time on March 19, and MLP Morales did not assess those needs earlier, this does not establish deliberate indifference, since a difference of opinion over matters of medical judgment does not give rise to a constitutional claim, *see* Harris, 941 F.2d at 1505, and Dr. Berrios's assessment was in light of Plaintiff's specific report of pain in her elbow.  As the Supreme Court noted in Estelle, where the prisoner received treatment for his back injury (bed rest, muscle relaxants and pain medications), but complained that more should have been done in the way of diagnosis, such as an x-ray or other tests:

> But the question whether an X-ray—or additional diagnostic techniques or forms of treatment—is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 107.  Viewing the facts in the light most favorable to Plaintiff, the undersigned concludes that Plaintiff has failed to show that Defendant Morales subjectively knew that delaying an x-ray of Plaintiff's elbow and failing to provide an arm sling posed a substantial risk of serious harm to Plaintiff's elbow and that he disregarded that risk by conduct that is more than mere negligence.  Because Plaintiff has failed to state a constitutional claim against Defendant Morales, he is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

As to Dr. Berrios, viewing the facts in the light most favorable to Plaintiff, the undersigned concludes that the evidence is insufficient for a jury to find that Dr. Berrios acted with deliberate indifference with regard to Plaintiff's finger or elbow.  The undisputed evidence shows that Dr. Berrios provided Plaintiff with a splint the day after she was notified that the first radiology report indicated the fracture of the finger, and she also referred Plaintiff to a specialist.  Furthermore, at the time Dr. Berrios reviewed the radiologist's report from the second set of x-rays of the finger, which recommended immobilization of the finger, she believed Plaintiff was still wearing the splint that had been provided to her on March 19.  Moreover, Dr. Berrios was very responsive to the surgeon's recommendation for surgery, as evidenced by the fact that Dr. Berrios authorized the surgery three days after the recommendation.  With regard to Plaintiff's elbow, the undisputed evidence shows that when Plaintiff reported pain specifically in her elbow and Dr. Berrios observed slight swelling of the elbow, Berrios provided Plaintiff an arm sling, directed Plaintiff to apply ice to the elbow, ordered x-rays of the elbow, and referred Plaintiff to a specialist.  Although the orthopedic surgeon recommended treatment for the finger, he did not recommend treatment for the elbow.  Finally, as to Plaintiff's claim that Dr. Berrios failed to properly supervise MLP Morales, in light of the undersigned's conclusion that there is insufficient evidence from which a jury could find that Defendant Morales was deliberately indifferent to Plaintiff's medical needs, Plaintiff cannot establish supervisory liability on the part of Defendant Berrios because she cannot establish a causal connection between Berrios's conduct and a constitutional violation.  Plaintiff has not provided any evidence that there was a history of widespread abuse that put Dr. Berrios on notice of the need to

correct MLP Morales' alleged failure to provide adequate medical care; Plaintiff has not identified a custom or policy of Dr. Berrios that resulted in deliberate indifference to Plaintiff's medical needs; and Plaintiff has not alleged facts that support an inference that Dr. Berrios directed her subordinates to act unlawfully or knew that her subordinates would act unlawfully and failed to stop them from doing so.  Therefore, Plaintiff has failed to produce sufficient evidence to show a basis for liability as to Dr. Berrios with regard to Plaintiff's Eighth Amendment claim.

Finally, the United States cannot be held liable for damages in a Bivens action because the doctrine of sovereign immunity precludes liability for damages and Bivens does not act as an express waiver of that immunity.  *See* FDIC v. Meyer, 510 U.S. 471, 486, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994); Correctional Serv. Corp. v. Malesko, 534 U.S. 61, 70–71, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001); *see also* Garcia v. United States, 666 F.2d 960, 966 (5th Cir. Unit B 1982); Harbert v. United States, 206 Fed. Appx. 903, 907 (11th Cir. 2006).

B.      FTCA Claim

As previously discussed, to prove medical malpractice, Plaintiff has the burden of proving by the greater weight of the evidence that the alleged actions of Defendants represented a breach of the prevailing professional standard of care, and that her injuries were proximately caused by Defendant's breach.  Fla. Stat. § 766.102(1, 3).  If Defendants produce depositions or affidavits of others in the medical field which establish that their conduct was in accord with accepted practice and standard in the community, the burden then shifts to Plaintiff to submit medical evidence showing that there is a genuine issue of material fact.  *See* Thomas v. Berrios, 348 So. 2d 905 (Fla. 2d DCA 1977); Sims v. Helms, 345 So. 2d 721 (Fla. 1977).  Generally, the standard of care in medical malpractice cases is determined through expert testimony.  Pate v. Threlkel, 661 So. 2d 278, 281 (Fla.1995); Torres v. Sullivan, 903 So. 2d 1064, 1068 (Fla. 2d DCA 2005).  Therefore, Plaintiff may not rely on her own conclusory allegations to survive summary judgment; rather, she must submit medical evidence to support her claim.  Florida case law indicates that summary judgment is appropriate in medical malpractice suits only when the moving party conclusively demonstrates that the non-movant cannot offer proof to support her position, that is, she is unable to produce an expert who will testify that the defendant was negligent.  *See* Wheeler v. United States, No. 1:03cv140/MP/AK, 2007 WL 3306639, at *2 (N.D. Fla. Nov. 6, 2007) (citing McCoy v. Hoffmeister,

435 So. 2d 989, 990 (Fla. 5th DCA 1983); <u>Williams v. McNeil</u>, 442 So.2d 269, 271 (Fla. 1st DCA 1983); <u>Holl v. Talcott</u>, 191 So. 2d 40, 44-46 (Fla. 1966)).

In the seminal case of <u>Holl v. Talcott</u>, 191 So. 2d 40, 43 (Fla. 1966), the Florida Supreme Court held, in a medical malpractice action, that the burden of proving the non-existence of a material fact must be conclusively established before the burden shifts to the non-moving party to refute the moving party's affidavit.  In <u>Holl</u>, the plaintiff was reduced to a vegetative state after an operation. The court reviewed the defendant's affidavits of physicians which merely indicated that the defendant physicians and hospitals had acted within the standard of care and practice in the community.  The court described such affidavits as "net opinions," in that they were "'naked assertion[s]—unsupported by expert medical explanation of its basis or reason it was reached.'" *Id.* at 45.  The defendants' affidavits did not detail everything that they did or all the medical treatment that was administered to the plaintiff, and the affidavits did not undertake to explain what caused the plaintiff's injuries so as to remove all doubt that the injuries were caused by their negligence.  *Id.*  As such, the affidavits were insufficient to conclusively demonstrate the absence of genuine issues of material fact and to shift the burden to the plaintiff.  *Id.*  Florida courts have relied on <u>Holl</u> in finding that defendant doctors have not provided legally sufficient evidence where a defendant doctor submitted his own affidavit which merely denied the charges in the complaint and stated that what he did was in accord with accepted practice and standards in the community, but the affidavit neither admitted or denied the conduct which the plaintiff cited as negligent and omitted any reference to the plaintiff's alleged necessity for a corrective medical procedure.  *See* <u>Williams</u>, 442 So. 2d at 270–71; *see also* <u>Bratt ex rel. Bratt v. Laskas</u>, 845 So. 2d 964, 967 (Fla. 4th DCA 2003) (non-party doctor's affidavit failed to carry the burden of proving the non-existence of a material fact as to plaintiff's negligence claim of failure to recognize skin rash as Lyme's disease; although non-party doctor's affidavit stated that defendant doctor had no duty to diagnose and treat skin rash being treated by other physicians, plaintiff had alleged in his complaint that when presented with his history and physical examination, defendant doctor had duty to diagnose and treat Lyme's disease, of which skin rash was a mere symptom, and the failure to recognize the symptoms as Lyme's disease, not the failure to treat the rash, was the negligence alleged).

Therefore, this court must first determine whether Defendants have produced sufficient evidence supporting their motion for summary judgment in order to shift to Plaintiff the burden of demonstrating the existence of an issue of material fact.  In the instant case, Plaintiff claims that Defendants were negligent by delaying x-rays of her elbow and failing to consistently provide an arm sling for her fractured elbow and a splint for her fractured finger, and that this negligence caused deformity and limited range of motion in both her elbow and finger, as well as unnecessary pain and suffering.  Defendants support their motion for summary judgment with a declaration of Defendant Berrios which provides details of the diagnosis and care provided to Plaintiff and states that Plaintiff was treated with the appropriate standard of medical care (Doc. 36, Ex. 1).  However, the affidavit does not affirm or deny whether Defendants failed to provide a splint for Plaintiff's fractured finger from March 6 to March18 and from March 29 to May 19, the date of Plaintiff's surgery; therefore, it does not constitute evidence that the failure to provide a splint or otherwise immobilize a fractured finger met the appropriate standard of medical care in the community.  Furthermore, Dr. Berrios's affidavit does not undertake to either explain the cause of the deformity and limited range of motion in Plaintiff's finger or state that the cause of the injuries is unable to be determined.  Moreover, the record contains medical evidence documenting Plaintiff's limited range of motion in her finger (*see* Doc. 46, Ex. 8).  Therefore, the undersigned concludes that Defendants have failed to show that there are no unresolved genuine issues of material fact with regard to the negligence claim concerning Plaintiff's finger.  Accordingly, summary judgment will be denied with respect to this claim against the United States.[4]

However, the summary judgment evidence is sufficient to shift the burden to Plaintiff with regard to her negligence claim concerning her elbow.  Plaintiff claims that Defendants' delay in taking x-rays of her fractured elbow and failure to consistently provide an arm sling caused deformity and limited range of motion in her elbow.  However, the medical evidence in the record conclusively refutes Plaintiff's claim.  The records of Dr. Mitchell, the non-party orthopedic specialist to whom Plaintiff was referred for treatment, show that on July 2, four months after Plaintiff's accident, she

---

[4]The denial is without prejudice to the filing of a second summary judgment motion with supporting evidence sufficient to shift the burden of proof.

had full range of motion of her elbow without difficulty (Doc. 46, Ex. 8).  On August 9, 2004, the last time Dr. Mitchell treated Plaintiff, x-rays of the elbow revealed no evidence of bony deformity, and examination of the elbow revealed full range of motion without difficulty (Doc. 46, Ex. 8).  This is sufficient evidence to shift the burden of proof to Plaintiff to show a genuine issue of material fact as to whether the delay in providing x-rays and the failure to consistently provide a sling caused deformity and limited range of motion of her elbow.  Plaintiff has produced no medical evidence to dispute Dr. Mitchell's findings.  Furthermore, the fact that she has failed to produce any expert medical evidence in the ten-month period between the filing of Defendants' summary judgment motion and the court's taking the motion under consideration conclusively shows that she is unable to do so.  During that ten months, Plaintiff was granted leave to conduct discovery, and Defendants provided Plaintiff with information from Dr. Mitchell, the non-party medical expert, that was in their possession (*see* Docs. 42, 43, 44, 46, 53, 54).  Plaintiff was advised that discovery procedures were available for obtaining information from non-party witnesses, and her requests for additional time to obtain this information were granted (*see* Docs. 54, 56, 57, 58, 59).  Although Plaintiff indicated that she had written two letters to Dr. Mitchell and he failed to respond (*see* Doc. 60), Plaintiff did not attempt to utilize discovery procedures to obtain information from Dr. Mitchell, and she did not seek assistance from the court in obtaining information from Dr. Mitchell that was not in Defendants' possession.  The court additionally notes that Plaintiff has never sought appointment of counsel in this case.  Therefore, it is reasonable for the court to find that Plaintiff had ample time within which to produce an expert and to conclude that she will be unable to do so.  Because Plaintiff did not submit any medical evidence to support her claim of negligence as to her elbow, and Plaintiff may not rely on her own conclusory allegations of negligence to survive summary judgment, the United States is entitled to summary judgment on Plaintiff's negligence claim with regard to Defendants' alleged negligent treatment of her elbow.  *See* Lambert v. United States, 198 Fed. Appx. 835, 839 (11th Cir. 2006).[5]

---

[5]The instant case is distinguishable from Wheeler, where the plaintiff submitted a letter authored by a physician which stated Plaintiff was "seen by another practitioner who did a unilateral reduction leaving the opposite side still dislocated," and he (the physician/author of the letter) performed surgery to remove hardware and loose screws.  *See* Wheeler, 2007 WL 3306639, at *2.  The district court held that the letter was sufficient medical evidence, for summary judgment purposes, linking the defendant to the plaintiff's injuries.

Finally, in light of the certification by the Attorney General that Defendants Morales and Berrios were acting within the scope of their office or employment at the time of the incident out of which Plaintiff's surviving federal tort claim arose, the United States is the only proper Defendant in this action (Doc. 37, attached Scope of Employment Certification).  *See* 28 U.S.C. § 2679(d)(1); 28 U.S.C. § 1346(b).

V.     CONCLUSION

Upon consideration of Plaintiff's claims and the evidence submitted, the undersigned concludes that all Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.  Defendants Berrios and Morales are entitled to summary judgment on Plaintiff's negligence claim brought under the FTCA.  Defendant United States is entitled to summary judgment on Plaintiff's FTCA claim with regard to alleged injury to her elbow, but the United States is not entitled to summary judgment on Plaintiff's FTCA claim with regard to alleged injury to her finger.

Accordingly it is respectfully **RECOMMENDED**:

1.     That Defendants' motion for summary judgment (Doc. 35) be **GRANTED** as to Plaintiff's Eighth Amendment claims against all Defendants.

2.     That Defendants' motion for summary judgment (Doc. 35) be **GRANTED** as to Plaintiff's negligence claim under the Federal Tort Claims Act against Defendants Morales and Berrios.

3.     That Defendants' motion for summary judgment (Doc. 35) be **GRANTED** as to Plaintiff's negligence claim under the Federal Tort Claims Act against the United States with regard to alleged injury to her elbow.

4.     That Defendants' motion for summary judgment (Doc. 35) be **DENIED** as to Plaintiff's negligence claim under the Federal Tort Claims Act against the United States with regard to alleged injury to her finger.

5.     That this case be referred to the undersigned for further proceedings

At Pensacola, Florida, this 28th day of March 2008.

/s/ *Elizabeth M. Timothy*

**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).